14-3127 Mr. Stewart and I guess Ms. Wigglesworth your other supervising attorney and then Mr. Dvorak. Whenever you are ready counsel. May it please the court, Will Stewart on behalf of the appellant, Mr. Yusuf Steele, if I could reserve three minutes for rebuttal. That's fine. Summary judgment was inappropriate in this case because the district court never actually analyzed the issue that is on appeal here before this court today. That was before that court that the district court acknowledged was raised by Mr. Steele. And that issue is, was Mr. Steele's liberty interest in posting bail, once bail is set, interfered with? But they had evidence, they put him in administrative segregation. So they had evidence that he was funneling business to Speedy Bail. Correct. And that there was some thought that perhaps he had, maybe threatens a bad word, or the wrong word, but threatened another inmate. So why weren't there actions in putting him in administrative segregation for what, how many days, 11? No, it looks like it was close to a month in administrative segregation. So how was that not rationally related to prison safety? I think the administrative segregation and the telephone restriction should be analyzed separately. Let's deal with administrative segregation right now. I think the issue when he was, before he was put in administrative segregation is that he was a trustee. And a trustee in the Middlesex County facility is allowed essentially greater time out of their cell than a normal person. Didn't he breach the trust with his relationship with Speedy Bail? By the allegations? Yeah. Well, I wouldn't, but I wouldn't deny that. But I think the appropriate remedy for that would be cutting back his trustee privileges. The trustee privilege is being able to Are we here to supervise the degree of segregation and safety that should be attended in a jail situation? What is appropriate and what is not? I don't think so. But under Belly Wolfish, I don't think it's just a rational, like a pure rational basis standard. Because Belly Wolfish incorporates is a measure that the prison has taken excessive. And I think as far as the administrative segregation But the test in Belly Wolfish is whether the restriction they imposed was rationally related to a legitimate, non-punitive government purpose. And that's a pretty easy test to meet. But I don't think it's, certainly we're not arguing for at least restrictive means, but I don't think it's pure rational basis in that you come up with a conceivable government purpose and you attach some connection between what they did to that purpose. You have to look at the actual asserted purpose, which this court has recognized is the proper way to approach this. And then you see whether the measure they took is excessive in relation to that purpose. And I think on the telephone restriction, if you consider that he was already in administrative segregation Let's just stop there. Doesn't it really have to be whether it's excessive? Isn't there really a range that they can go within? In other words, if it goes below the range, maybe it's just not rational. But how was what they did here not rational? This person is conducting, according to them, a business. And he has perhaps threatened another inmate. That's how this whole thing got started. With what, Bredenton or whatever the person's name? Bredenton. Bredenton. And they're saying, hey, we've got to get him away. And they do the search of the cell, and they find he's got all kinds of numbers and whatnot. It looks like things are adding up and adding up and adding up. And we go, okay, let's just put him aside. He's in the timeout corner, if you will. And he still had some phone privileges. We'll get to that. But on the administrative segregation, what else were they to do? Tell him not to do this? Because he was a trustee, and the trustee allows you to be out of your cell more than the normal inmate. And it appears to be that in that time that he is out of his cell more than your average inmate, that is when he is committing the allegations that underlay his original placement. What's the relevance of him being a trustee as opposed to anybody else hustling a business in the prison? Because I think it would be something that the prison could focus on first. He was a good guy, so to speak, and he breached the trust, and so we put him in administrative segregation. That's what happened here, right? I don't think good or bad. He essentially worked and did stuff for prison, other inmates, other detainees. And in exchange for that, he spent more time out of his cell. I think, however, regardless of how you come out on the administrative segregation, once he is in the segregated confinement, and once a social worker needs to be there to, it appears, place calls for him, let alone monitor his calls, the further restriction on his telephone privileges, which appears to be one only legal call about every six days, is excessive under a Bellevue-Wolfe standard. How much access do you want him to have to the telephone? I would look at what he had before. I don't think it's that he needs... But what he had before was pretty much unrestricted, right? I think the... So the Middlesex Guidelines are indicative of kind of what normal inmates get, which is open access to telephones in general. Where do the guidelines say that an inmate in administrative segregation must have the same access as one not in administrative segregation? They don't, but what they do provide for, and they actually provide for it in the SENDS inmate context, which is the floor for what a pre-trial detainee like Mr. Steele should be able to expect, what they provide for is one phone call a week excluding legal calls. That is one personal business call a week excluding legal calls. So do they have unfettered access to legal calls in segregation? I don't think unfettered is... We're not asking for unlimited, he can make a phone call whenever he wanted, but it looks like... What are you asking for? Because he did make a phone call. He made three, I think. But importantly, he could have made a phone call had he been allowed to the day his bail was lowered, $2,500, and he was prevented from doing that. And he was allowed a phone call only to a lawyer the next day, and it doesn't look like on that day he actually reached anyone on the other end. And six days later, essentially the same thing happened, and it took six days after that. And this is the sort of restriction that when someone is being held on bail and when that bail has been lowered to an amount that they could post, they would want to be able to contact more people than simply a lawyer who is appointed to represent them in another case. So is this liberty interest to bail, so to speak, recognized in this circuit? It has not been recognized in this circuit explicitly. But the Dodds case out of the Tenth Circuit, the most recent case to deal with it, the Gaylor case, which preceded it by about 20 years, the Dornan case out of the Seventh Circuit, the Campbell case, all of the courts to address this that we could find thus far have found a liberty interest here, all the district courts as well. And I think the reason that there is a lack of precedent on this specific issue is because I don't know how often it would come up. My question is, isn't that clearly established right in this circuit, in the context of the prism of qualified immunity? Well, I don't think you need directly on point circuit precedent to reach qualified immunity. I think this court has made that clear when there's not a case directly on point in this circuit. We can look to other circuits. We can look to a general right that has been created by other courts to find qualified immunity or to not find qualified immunity. Let me go back to the facts, if I understand. He's put in administrative segregation on February 25th of 2009. Is that right? And the bail was reduced nine days later on March 6th. March 5th. March 5th. Eight days later. And then it takes him another 15 days to get somebody ultimately to post bail. So what are you suggesting? Are we talking about 23 days here or eight days is the real problem? Because the bail got reduced, and whether he was in administrative segregation or not in administrative segregation, it sounds like it took 15 days no matter what for somebody to ultimately come forward with enough to allow him to get out on the $2,500 bail. I think the officials need to show or need to meet a standard. When they originally placed him in this restriction, which is in late February, that would satisfy Bellary Goldfish on both the segregation and on the telephone restriction. So I think it begins there, and I don't think they can show that. But certainly on March 5th when he goes to court, when he returns from court with newly lowered bail, when he asks for a telephone call, when he is denied that telephone call, those 15 days he did not have to spend in this facility. And I think particularly if you look at the asserted legitimate government interest here, we do not deny that there is a government interest here in internal prison security. But the shared interest here is that the prison doesn't want Mr. Steele in this facility any more than Mr. Steele wants to be in this facility. They do not have an interest in cutting off his telephone access in such a way that will prevent him from leaving the facility earlier. How much earlier do you think he would have left the facility if he had more open telephone privileges once he was in administrative segregation? It's the restriction on people who he might have wanted to call. And he could not have called under this restriction, which admittedly is unclear. And it's unclear in part because the district court never got to this stage of the analysis. The only things that we know about the restriction are essentially from Mr. Steele's own testimony. There's no notation about it from the officials. There was no statement in any sort of prison memo that said this is what is being placed on him. It appears, though, that he could only call this lawyer, Mr. Kessus, who was appointed for him in a previous matter. And when someone's bail is lowered, that I don't think is the first person you would want to call. But in any event, on the first two calls, it essentially looks like they didn't get through and that was it for the six days. So you're saying he has a state-created liberty interest in what, more access to a phone? I think if you look at the manual, he has a state-created liberty interest in the provisions that the manual provides for. And what did the manual provide for for those in administrative segregation? The manual provides for, at bottom, one personal business phone call a week excluding legal calls. So that is not what Mr. Steele got here because he got essentially one phone call a week and that was only a legal call. But the manual doesn't speak to administrative segregation at all, does it? There are essentially two parts to the manual. The pre-trial, pre-extension section. The pre-trial, it does certainly speak to administrative segregation as an option. But not the parameters of what administrative segregation is going to look like. No, but importantly, my time is about to run out. That's fine. Importantly, however, it specifies that the general rule in the Middlesex facility is that open access to telephone calls will be provided except for inmates in disciplinary lockup. He was conceivably not in disciplinary lockup. What standard should we apply to a state-created liberty interest claim brought by a pre-trial detainee? You're no longer an advocate. You're the court. You're writing this. What standard should we apply? I think that he would be home standard, which this court has reaffirmed in the Stevenson case. Essentially, does the language in the manual, the guideline, the regulation, whatever it might be, is it unmistakably mandatory such that an official who is placed in the role of exerting power on someone would not be able to take any steps, would not be able to exert that power absent specific criteria? I'll see if you can say that in 25 words or less. Is there unmistakably mandatory language, will, shall, and are there exceptions to that that are enumerated in the guidelines such that you can't take the step unless those criteria are met? All right. Thank you very much. We have for Ms. Dvorak. Thank you. May it please the Court, Laurie Dvorak on behalf of the police. One of the questions Your Honors had asked was, and was some discussion about, was as to the duties of a trustee. Plaintiff's own words that are in the record below tell us, Plaintiff testified his duties as a trustee included, among other things, collecting laundry, serving meals, and painting the units when needed. The time out of his cell was the time out of his cell by virtue of his level of incarceration pre-administrative segregation. I surmise that what he's really, Mr. Stewart is really bringing up is, how did the restrictions on his phone use advance the interest of prison safety? He was, by very definition, running his bails through the use of the telephone. He was using his calls to speedy bail bonds and third parties to third party in speedy bail bondsmen to set up these bails. He was conducting his running of the bail business over the telephone. The very reason why a telephone restriction was put in place to prevent him from running bails over the phone in the first place. What about when his bail is reduced? Do you see an issue here with his bail having been reduced and no access to a telephone in an effort to try to secure a bail? Well, he did have some access to a telephone because he was able to contact a lawyer. He did have some access, right. However, we did not, and there was nothing in the record that interfered with his access to the mail to reach out to anybody. His access through visitation to reach out to anybody. All of the other avenues that he wasn't conducting his business through were not affected at all. There was nothing, no impairment or restrictions on his right to contact anybody by any means other than the way he chose to use his access to try and run the bails. Well, he doesn't have access to a computer there in an administrative state, does he? No, there is no access to computers at the facility at all. So he's not just limited only as his phone use. You said he could communicate any way he wants, but he can't. He can't use a computer. Well, incident to the prison life. And snail mail is not exactly a great way to do a bail business. It's not the fastest way certainly to contact anyone these days. But to conduct a bail business, which is improper under banking and administration regulations, and certainly the facility had some concerns because there was allegations that there were threats going on against other inmates. This is long gone past, hey, let me help out my friend here. This is about your business. Maybe one threat to one particular inmate. I think in part, what Mr. Stewart did say explicitly, isn't there a less restrictive alternative that you might have used to monitor his phone use? There are rarely times when you say there isn't a less restrictive means, but that also has to be balanced with just how much time and resources does the facility have. We could have assigned someone to listen to every single phone call. Only Mr. Steele did. But during the course of our investigation, we're investigating whether other people are running bails as well. Now we have corrections officers sitting as phone operators listening to phone calls, listening for the code words that come up. As it was, this was referred to the county prosecutor's office and to the Department of Banking and Insurance because we don't know at this point what the impact of these running bails are. Are they getting paid? Are they getting credit? Is this diluting the bail that is being set by the courts? We don't know any of that at this point in time. But in a situation like this, he goes to court, comes back, there's documentation, his bail has been reduced. Give him a phone call. And he did. He contacted his lawyer. He's in court. He gets his new bail. He comes back. He contacts his lawyer. The lawyer three-ways people in. And sometimes the people answer the phone, sometimes they don't. The plaintiff's own words, again, tell us he didn't even give his buddy Jimmy's phone number to his lawyer because Jimmy wouldn't answer the lawyer's phone call because he wouldn't recognize the number. So there's just nothing that shows us that he would have been able to secure the bail any faster had he been able to make 50 phone calls. Unlike the restrictions that were in place in Dodd and Gaylor, those were absolute and complete impediments to people posting bail. Telling someone that there is no bail or rejecting the offered bail, those are total and complete. Even with this restriction in place, he was still able to post bail. And I think that sets a different distinction than a total and complete prohibition against it, versus even while this restriction was in place, he's still able to do it, although it may not be the easiest way for him to do it. But I think he chose that when he chose to conduct this business over the jail's phone system. Do you normally restrict phone access for all inmates in administrative segregation? Administrative segregation has restricted phone privileges greater than general population. They are allowed out in a secure enclosure for their hour, which is when they can have their visitation. They can use the phone during that hour. They don't have 24-hour-a-day phone access the way a general population inmate would. So at least one hour a day that Mr. Steele could have used a phone? If he was in administrative segregation, yes. The phone and the visitation would have been available to him during that hour. Now is that administrative segregation for pretrial detainees or those who are there for custody? Anyone who is housed in that unit, that is the procedure that is followed. So whether it is a disciplinary detention or an administrative segregation, there is some phone access that is permitted unless there is otherwise a reason to restrict the phone access. So you tell us that he had a phone access every day while in administrative segregation for one hour? He would have normally, but for the fact that he was not allowed to in this case because he was running his bails over the phone. So he had an extra condition? Yes, he had an extra condition that was placed on it because of his access. So typically administrators say a population would have an hour where they could access the phone, but in this case because of what he did, the prison restricted that? Correct. Wouldn't life have been a whole lot simpler if you just say, look, you can place any call you want, a personal call, you can place a legal call, but you are not going to be, while you are here, you are not going to be placing any calls for bail bond purposes other than to have somebody work on your own. What was wrong with that? That leaves us with two things. One, he is not supposed to be running bails to begin with. He is trying to get himself out of bail. Right. He is trying to get himself out, but we are still precluding him from talking to the bail bondsman, the very people that he would need to set that up with. He could have had a surrogate do that. Assuming he would have been able to reach one, as he said, Jimmy doesn't answer his calls, he didn't testify that anybody else would have been able to come forward and provide the bail for him would he have been able to reach out to them. There is nothing that plaintiff has come forward with in the record below that suggests he had any way of accomplishing this any sooner than he actually did. Do we have any kind of statistics on how long would one put in administrative segregation or how long a pretrial detainee takes to get bail made? Let's start with that. We don't. Okay. I'm going to ask you the same question I asked Mr. Stewart. What standard should we apply to a state created liberty interest brought by a pretrial detainee? I think the test in bail is particularly helpful. Whether the restriction is, if it's not reasonably related to a legitimate goal, if it is arbitrary and purposeless, a court may infer that the purpose is punishment. In this case, we're not trying to punish him. We're trying to restrict him from doing his bail running business. We're trying to ensure the integrity of the bail process itself. I mean, we don't know if he was getting paid, if he was getting credits for these bails, if he could put a down payment down, thereby reducing the import of what an actual bail that was set by a judge means. We don't know any of these things at this point, and this is what the investigation is merely starting. This is day one when all of these factors are before us, and we're trying to see now what do we do to protect all of the interests of our facility, of the judicial system, of the judges who have set bail. This is what we're trying to figure out. Where do you go when you're only on day one? Does qualified immunity fit into this matrix at all from your perspective? I think it does, clearly. Although counsel has argued that other circuits may establish it, the only other cases out there have said when there has been a wholesale prohibition on the access to bail. As I said earlier, Dodds talks about- Is it the Tenth Circuit case? Yes, the Tenth Circuit case, Dodds and Gaylor, that the offered bail was rejected and information on bail was withheld. They were complete impediments to this. This is merely a restriction, and I don't believe there are any other cases that were cited that talk about restrictions that limited it. Because obviously, even with the restriction in place, he was able to post bail. In these other two cases that plaintiff relies on, they talk about these things had to be removed in order for bail to be posted. In our case, even though our restriction was in place, bail was still able to be posted. Other questions? Yes, sir.  Thank you very much. Thank you, Your Honor. Just really quickly, I think Judge Ambrose, you recognize that there is a difference, importantly, between being able to use the mail versus being able to use the phone, and that is the lag time that is built into mail. Certainly, you do not dispute that there is nothing in the record that suggests that Mr. Steele did not have normal access to mail. But that's not enough, and counsel's reliance on the differences between this case and Dodds and Gaylor, that those are about wholesale, you cannot post bail, versus this, don't fly. What evidence do you have that, despite the extra restrictions on him with regard to the use of a phone, that he would have gotten out earlier than he did? It was 23 days. How many days do you think it would be less than 23 days? I think there's evidence in the record that suggests that two days after he was finally able to reach someone on the phone, with the phone restriction, March 18th, two days after that, bail posted. There's nothing else in the record that suggests a direct causal link one way or the other, but that's the evidence we have. He's trying to make these calls. It's not disputed that, in the record, he asked for a phone call every single day he was in this lockup. He certainly asked for one the day his bail was lowered. There's no interest in preventing him from making these calls. If he wants to communicate with people on the outside who would help him raise the money to post bail. And I think the legitimate interest could have been served here by a Speedy Bail Bonds specific restriction. The allegations in this. Speedy Bail Bonds? That's the underlying offending, Bail Bonds Company. No, I get that. The allegations involve Mr. Steele and Speedy, and it does not appear that he could make any phone calls in this segregated confinement without the assistance or dialing of a prison social worker. So why couldn't she monitor him, Mr. Steele, to make sure he didn't call anyone but this offending Bail Bonds Company? Would you address qualified immunity, why there shouldn't be qualified immunity in this case? I don't think the differences between the Dodds and the Gaylor case, or Gaylor specifically since Dodds posted this, are all that different. The purpose is that Dodds and Gaylor set out a right. There's a liberty interest in posting bail once bail is set. In Dodds, we would admit that there was willful denial, really, of bail. But in this case, if you acknowledge that there's the liberty interest, then the restriction they had had largely the same effect. And importantly, the plaintiff in both Gaylor and Dodds spent less extra time in prison as a result of that denial than Mr. Steele spent in prison as a result of what counsel calls essentially not a denial, just a restriction on the means he could use to post bail. Your Honors, we respectfully ask that you reverse the judgment of the District Court and remand for proceedings consistent with this opinion. Thank you. Thank you. Thank you to both counsel for extremely well-presented arguments. I wish that they all were like this all the time. Life would be much easier. And thank you again to the Decker firm for being involved in this. It's a privilege to have you both here. Thank you. Thank you.